UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAKIN LOWERY,

                           Plaintiff,

     v.                                    No. 15-CV-4577 (KMK)

WESTCHESTER COUNTY DEPARTMENT      OPINION & ORDER
OF CORRECTION; SGT. LOPEZ, Badge
#157; SGT. S. CARDEN, Badge #149;
ASSISTANT WARDEN KARL VOLLMER,

                           Defendants.

---

Appearances:

Hakin Lowery
Jamaica, NY
*Pro Se Plaintiff*

Sean T. Carey, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiff Hakin Lowery ("Plaintiff"), an incarcerated inmate proceeding pro se, filed the instant Complaint against Defendants Westchester County Department of Correction, Sgt. Lopez, Sgt. S. Carden, and Assistant Warden Karl Vollmer pursuant to 42 U.S.C. § 1983 alleging constitutional violations arising out of the denial of the use of a private video telephone, which Plaintiff intended to use to speak with his attorney regarding his then-pending criminal case. Before the Court is Defendants' Motion To Dismiss. For the reasons to follow, Defendants' Motion is granted.

I.  Background

Because this case is before the Court on a motion to dismiss, the Court takes all factual allegations in the Complaint as true.

A.  Factual Background

Plaintiff was arrested on February 26, 2014 in connection with a charge for a narcotics conspiracy.  (*See* Compl. at unnumbered 15 (Dkt. No. 2).)[1]  Although Plaintiff was originally housed in the Metropolitan Correctional Center in New York City, he was moved to the Westchester County Department of Correction, a named Defendant, in Valhalla, New York after the Assistant United States Attorney prosecuting the case revealed that Plaintiff had been targeted for a hit by members of a gang.  (*See id.*)  The transfer was secured in order to ensure Plaintiff's safety.  (*See id.*)

Plaintiff arrived in Valhalla in April 2014.  (*See id.*)  At the new facility, although Plaintiff was permitted to communicate with his attorney via a video telephone, 16 out of the 19 times he used such a device, he was required to conduct his video call in the general population pod.  (*See id.*)  While the other inmates in the general population pod could not hear what Plaintiff's attorney was saying, they could see the attorney on the video screen and could hear Plaintiff's comments and questions.  (*See id.* at unnumbered 16.)  Because of the circumstances of the video telephone calls, Plaintiff's attorney requested, on several occasions, to prematurely terminate the call so as to ensure Plaintiff's safety and privacy.  (*See id.*)  Plaintiff notes that this was particularly frustrating to him because in his criminal case, he had been offered a deal by the

---

[1] Because the Complaint lacks page or paragraph numbers, the Court will cite to the ECF-generated page numbers.

government in exchange for his cooperation and he wanted to seek the advice of his attorneys. (*See id.*)

Plaintiff filed a formal grievance, requesting that he be allowed to conduct his video telephone calls in a private visitation room. (*See id.*) The grievance was denied, and a subsequent appeal confirmed that denial. (*See id.*) The appeal denial noted that while "[i]t [was] true that anyone can see the screen[,] . . . the video phones have handsets so anything [Plaintiff's] attorney [said] . . . [was] strictly between [Plaintiff] and [his] attorney." (*Id.* at unnumbered 13.) The appeal also noted that Plaintiff's "attorney ha[d] the option of coming to the jail, meeting with [Plaintiff] in the visit room and accordingly having privacy in the attorney booths." (*Id.*) During this time, Plaintiff's attorney contacted the Westchester County Department of Correction, requesting that Plaintiff be allowed to communicate with her via a private video telephone. (*See id.* at unnumbered 17, 19–22.) Although Plaintiff's attorney had some success in this endeavor, she was notified on May 7, 2015 that Plaintiff would no longer be allowed to use the private video telephone because it was too much of an inconvenience. (*See id.* at unnumbered 17.) Plaintiff alleges that, all told, he was allowed to use the private video telephone, located in a different part of the prison, only three times. (*See id.*)

Plaintiff alleges that Defendants "put Plaintiff's life in jeopardy" by denying him access to a private video telephone. (*Id.* at unnumbered 14.) He seeks compensation in the amount of $3 million and seeks an injunction directing Defendants to "adhe[re] to proper procedure in the future." (*Id.*)

B.  Procedural Background

Plaintiff filed his Complaint on June 9, 2015. (*See* Dkt. No. 2.) Defendants filed a letter on June 21, 2016 seeking leave to file a Motion To Dismiss. (*See* Letter from Sean T. Carey,

Esq., to Court (June 21, 2016) (Dkt. No. 13).) The Court thereafter set a briefing schedule for the Motion. (*See* Dkt. No. 14.) On August 5, 2016, Defendants filed their Motion To Dismiss and supporting papers. (*See* Dkt. Nos. 15–19.) Plaintiff did not file opposition papers. On September 26, 2016, Defendants wrote the Court informing it that they did not intend to file a reply and that they would rest on their moving brief. (*See* Letter from Sean T. Carey, Esq., to Court (Sept. 26, 2016) (Dkt. No. 20).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-

4

specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). The Court thus draws the pertinent facts from the Complaint and the documents appended to the Complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with

5

relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

The Court agrees with Defendants that Plaintiff's Complaint is best construed as raising a claim that Defendants violated his Sixth Amendment right to counsel. (*See* Mem. of Law in Supp. of County Defs.' Mot. To Dismiss ("Defs.' Mem.") 7–8 (Dkt. No. 17).)  The Court will thus first consider whether Plaintiff has adequately stated a claim for a violation of his Sixth Amendment rights.

1.  Inmates' Sixth Amendment Right to Counsel

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  Pursuant to the Sixth Amendment's guarantee of a right to counsel, "inmates must have a reasonable opportunity seek and receive the assistance of attorneys."  *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *partially overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).  Thus, prison regulations that restrict a pretrial detainee's contact with his attorneys are unconstitutional "where they 'unreasonably burden[] the inmate's opportunity to consult with his attorney and to prepare his defense.'"  *Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001) (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978), *rev'd sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979)).

Plaintiff's sole allegation in this case is that Defendants denied him the ability to use a video telephone to communicate with his attorneys during the pendency of his criminal

proceedings. Numerous district courts have found that prison restrictions on contact with attorneys do not unreasonably burden a plaintiff's right to counsel if the plaintiff has alternate means of communicating with counsel. *See, e.g.*, *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), *adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011); *Schick v. Apker*, No. 07-CV-5775, 2009 WL 2016926, at *2 (S.D.N.Y. July 10, 2009) ("[The plaintiff] neither alleges nor offers evidence that [the] defendants restricted other means of access to his attorneys, such as mail, monitored telephone calls, and in-person visits regarding pending criminal matters. In light of the fact that [the plaintiff] both retained and availed himself of such access to his attorneys, the [c]ourt finds that the few calls that were denied did not unreasonably burden his opportunity to consult with counsel and to prepare his appeal." (internal quotation marks omitted)); *Davidson v. Davis*, No. 92-CV-4040, 1995 WL 60732, at *6 n.3 (S.D.N.Y. Feb. 14, 1995) ("As plaintiff met with counsel on five occasions while incarcerated at the MCC, his claim of inability to communicate with counsel lacks merit."); *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("[S]tates have no obligation to provide the best manner of access to counsel. Rather, restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel."). Put another way, "prisoners are not entitled to their preferred method of communicating with counsel." *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) (report and recommendation). Nowhere does Plaintiff allege, or even suggest, that other means of communicating with counsel were impaired. In fact, one of the documents appended to the Complaint confirms that Plaintiff's "attorney ha[d] the option of coming to the jail, meeting

7

with [Plaintiff] in the visit room and accordingly have privacy in the attorney booths." (Compl. at unnumbered 13.) Moreover, Plaintiff does not allege that he was denied an opportunity to speak with his attorney via video telephone, only that the circumstances were not as private as he desired. There is thus no question, taking as true all allegations in the Complaint, that Plaintiff was offered opportunities to speak with his attorneys in a private, confidential setting. That Plaintiff was not afforded his preferred option does not rise to the level of a constitutional violation.

Though the Court appreciates the difficulty inmates face in coordinating with attorneys, there is no constitutional right for a pretrial detainee to enjoy the most sophisticated or convenient mode of communication. The unavailability of a private video telephone can hardly be said to "unreasonably burden[] the inmate's opportunity to consult with his attorney and to prepare his defense." *Benjamin*, 264 F.3d at 187 (internal quotation marks omitted).[2] Accordingly, Plaintiff has failed to state a claim under § 1983 for violations of his Sixth Amendment rights. Because Plaintiff has failed to state a claim, the Court will not consider Defendants' argument that Plaintiff failed to allege personal involvement of the individual Defendants.

### 2. Qualified Immunity

Even if, however, reasonable minds could differ on whether Plaintiff has stated a claim for violations of his Sixth Amendment rights, the individual Defendants would be entitled to qualified immunity.

---

[2] As discussed in the exhibits attached to the Complaint, the prison had a good reason to deny Plaintiff's request—if it granted his request, there would be more such requests from other inmates than prison officials could handle. Plaintiff has not alleged that this concern was disingenuous.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "[Qualified] immunity protect[s] government's ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (second alteration in original) (internal quotation marks omitted). Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted). Application of qualified immunity is appropriate at the motion-to-dismiss stage where "the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable law enforcement officer in the defendant's position would have believed his or her conduct would violate the asserted constitutional right. *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").

The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (second alteration in original) (citations and internal quotation marks omitted). Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 2094 (citations and internal quotation marks omitted). Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Here, there is no question that the Second Circuit has confirmed, with reasonable clarity, the right of an inmate to be free from unreasonable restrictions on his Sixth Amendment right to counsel. *See, e.g.*, *Wolfish*, 573 F.2d at 133; *Benjamin*, 264 F.3d at 187. As set forth above, however, numerous courts in the Second Circuit have dismissed, or granted summary judgment against, Sixth Amendment claims in similar circumstances. Based solely on the allegations in the Complaint and the documents attached thereto, it cannot be said that "every reasonable official," *Reichle*, 132 S. Ct. at 2093 (internal quotation marks omitted), would have understood that denying an inmate the opportunity to use a private video telephone when other means of communication, including a video telephone in a less private area of the prison, were still available would infringe on the inmate's constitutional rights. There is no law in the Second Circuit suggesting that prisons are required to offer private video telephones to inmates seeking

10

to communicate with their attorneys, nor is there even law in the Second Circuit that prisons are required to provide any type of confidential remote communication services to inmates. *See, e.g.*, *Groenow*, 2014 WL 941276, at *6 ("[The plaintiff] alleges that [the defendant] forced him to call his attorney on a monitored telephone line, thus destroying the confidentiality of their conversations. This allegation alone is insufficient to demonstrate that [the defendant] unreasonably burdened his opportunity to consult with his attorney . . . ." (footnote omitted)); *Schick*, 2009 WL 2016926, at *3 (granting summary judgment to the defendants "[i]n light of . . . the lack of restrictions placed on inmates' communication with counsel through the mail, monitored telephone calls, or in-person visits; and [the plaintiff]'s failure to adduce facts that demonstrate the invalidity of these limitations or counter [the facility's] legitimate security interest in restricting unmonitored communications by prisoners"). It was thus reasonable—and, in the Court's view, correct—for the individual Defendants to conclude that Plaintiff was not constitutionally entitled to a private video telephone call with his attorneys. In such circumstances, where the Complaint raises no possibility that the alleged deprivation of Plaintiff's constitutional rights was anything other than a mistaken interpretation of the law, qualified immunity is appropriate at the motion-to-dismiss stage. Accordingly, even if Plaintiff were correct that the individual Defendants violated his constitutional rights, they are entitled to qualified immunity and the claims against them must be dismissed.

3. Municipal Liability

Defendants also argue that Plaintiff has failed to state a claim against the Westchester County Department of Correction under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).[3]

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes*, 723 F.3d at 405–06. "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, No. 09-CV-3727, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S.

---

[3] Although Westchester County Department of Correction is not a suable entity, the Court presumes that Plaintiff intended to name Westchester County itself as a defendant.

397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 37 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue."); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

Defendants argue that "Plaintiff has failed to sufficiently state a claim that the County of Westchester had a policy or custom that violated his Sixth Amendment right to counsel." (Defs.' Mem. 12.) They argue on the ground that Plaintiff "identifies neither a policy nor a custom—nor does he allege a single act that constitutes a deprivation of his constitutional rights." (*Id.*) Defendants appear to argue that Plaintiff's *Monell* claim is deficient solely because he has failed to adequately allege a deprivation of his constitutional rights.

Defendants are correct that Plaintiff has failed to state a claim under *Monell* because he has not alleged a deprivation of his constitutional rights. *See supra*. Additionally, however, Plaintiff has not alleged, with sufficient specificity, a policy or custom of the Westchester County Department of Correction. While one might infer from Plaintiff's submissions that the denial of the use of the private video telephone in the control room was a policy of the institution, no such allegation appears in his Complaint. Though such a deficiency could be corrected through amendment, it nonetheless precludes Plaintiff's Complaint from going forward at this stage.

And Plaintiff is unable to rely on the mere fact that he was denied access to the video telephone. It is well settled that "[a] single act of a government official or employee . . . does not give rise to liability unless it was one taken pursuant to or caused by an official policy or the official or employee was one who possessed final authority to establish municipal policy." *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993); *see also P.A. v. City of New York*, 44 F. Supp. 3d 287, 303 (E.D.N.Y. 2014) ("For the municipality to be liable for a single act, the plaintiff must identify a responsible municipal official who 'has final authority over significant matters involving the exercise of discretion.'" (quoting *Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005)), *appeal dismissed*, 633 F. App'x 7 (2d Cir. 2015). Plaintiff has not

alleged that the individuals who denied him access to the video telephone exercised final authority over municipal policy, nor has he even identified the individuals responsible for his denial of access to the video telephone.

Thus, even if Plaintiff is correct that his constitutional rights were violated by denial of access to the private video telephone, there remain deficiencies in his Complaint that, although they could be corrected in an amendment, preclude his claim from going forward at this stage. In any event, however, because the Court holds that Plaintiff's constitutional rights were not violated by the denial of the use of the video telephone, Plaintiff has not and cannot state a claim against the Westchester County Department of Correction pursuant to *Monell*.

### 4. Dismissal Without Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)). Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

As set forth above, the Complaint, well drafted in many respects, fails to state a claim because the law in the Second Circuit does not entitle Plaintiff to his preferred choice of communications with his attorneys. While the Court is unsure whether any amendment could

16

cure the deficiencies identified in Plaintiff's Complaint, because Plaintiff is pro se, and because Plaintiff has not yet had an opportunity to amend, the dismissal will be without prejudice.

### III. Conclusion

For the foregoing reasons, the Motion is granted without prejudice. Should Plaintiff wish to amend his Complaint, he must do so within 30 days of the date of this Order. If Plaintiff does not file an Amended Complaint within that time, his Complaint will be dismissed with prejudice and the case will be closed. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 15.)

SO ORDERED.

DATED: February 8, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

17